HENRY MOSEMAN ET AL., TRUSTEES, APPELLEES, V. JOHN HEITSHUSEN ET AL., APPELLANTS.

FILED JANUARY 19,.1897. No. 7038.

1. **Deeds: CONDITIONS.** The condition in a deed upon which title of lands conveyed for church purposes shall revert to the grantor cannot be invoked by one faction of the grantee to the prejudice of another.

2. **Religious Societies: CIVIL COURTS.** Where the rights of a faction of a church to control its property or records are mainly dependent upon matters of religious doctrine, as to which the disputing factions entertain diverse views, civil courts should decline to interfere.

APPEAL from the district court of Burt county. Heard below before FERGUSON, J. *Reversed.*

*Ira Thomas,* for appellants.

*H. H. Bowes, contra.*

RYAN, C.

By their petition filed in the office of the clerk of the district court of Burt county, the appellees, as plaintiffs, alleged that in 1873 Simon and Mary Kerl, for church purposes, deeded to certain named persons, as trustees of the Lutheran Church of Burt and Dodge counties, a certain described forty-acre tract of land situated in Burt county, and that it was provided in said deed that "if said Lutheran Church shall be dissolved, or if some other religious society shall occupy said church and property," then thirty of the said forty acres should revert to the grantors. A considerable portion of the argument found in the briefs of the respective litigants is devoted to the discussion of the effect of certain acts of certain church factions as working a forfeiture under the terms of the aforesaid deed, but as the grantors in said deed are not parties to this action this discussion is entirely irrelevant. When the parties in interest seek a forfeiture it

will be time to consider this question and not till then. It is alleged in the petition that the members of the society to which said deed had been made on April 4, 1893, adopted the following preamble and resolution: "Whereas it appears that there is no record of the adoption of the constitution of this religious association or the change of name from the Lutheran church of Burt and Dodge counties to the St. Paul German Lutheran Church: Therefore, be it resolved, that we proceed to adopt a constitution to govern the association or church as provided in the deed from Simon Kerl." It was averred in the petition that the defendants voted against the adoption of the above preamble and resolution, and immediately following this averment were allegations in this language: "That after the adoption of said constitution the said members signed the same, except defendants herein, and adopted the following resolution by a unanimous vote; that the members of plaintiffs' faction are as follows: Henry Von Essen, T. D. Claussen, J. H. Kuhlman, H. Morsemann, Herman Von Essen, John Kuhlman, Mauritz Stevens, Otto Uehling, Gerard Havekost, Claus Hartz, R. C. Suhr, Jr., R. C. Suhr, Sr., John D. Suhr, Dietrich Stolle, Carl Kuenemann, Johannes Jopp, H. Heinrich Schutte, D. Herreilers. Resolved, that the name of this church be changed from the Lutheran Church of Burt and Dodge counties to the Evangelical Lutheran St. Paul's Church of Burt county and the vicinity." It was alleged in the petition that this resolution was published in the Oakland *Times* (presumably a newspaper) for three weeks as provided by law, and that prior to the adoption of said resolution plaintiffs had been duly elected trustees of said church, of which election a certificate was filed in the office of the county clerk of Burt county. It was further alleged by the plaintiffs that John Heitshusen, one of the defendants, had with force taken the records of this said church and turned them over to J. P. Kuehnert, and that both Heitshusen and Kuehnert refused to return them to plaintiffs, who, by law, are made the custodians

of said books and papers of said church; that Kuehnert is the minister the defendants desire to employ as minister in charge of said church, and that Kuehnert had threatened and was about to hold church in the church building of this society, and that unless restrained by an order of the court would break and enter said building; that there were fifteen members of said church as against nine of the defendants. From the foregoing averments of the petition we assume that plaintiffs claimed to assert certain rights by virtue of being the sole members of the church organization entitled to the possession and use of the property conveyed by Simon and Mary Kerl as well as of certain church records. The prayer of the petition accordingly was, in effect, that the defendants be enjoined from interfering with the exclusive rights claimed by the plaintiffs. The attitude of the contending parties toward each other was described in the petition in this language: "Said J. P. Kuehnert is a member of what is known as the Missouri Synod of the Lutheran Church. There is but little difference in the religious teachings of said two synods (the General Lutheran Synod of the United States and the Missouri Synod of the Lutheran Church), but there is a great difference in the government. The General Synod is much more liberal with its members than the Missouri Synod; said Missouri Synod is very strict in its control of its members; they insist upon the children of the members attending the parochial schools, and prevent members from joining any secret organization or secret society of any kind; the majority of this society desire to join the General Synod and have made application so to do; said Lutheran church of Burt and Dodge counties has never belonged to any synod; the buildings on the said land were built by the subscription of the several members at that time; said defendants, although in the minority, refuse to unite with the plaintiffs in joining the General Synod." It was further alleged in the petition that J. P. Kuehnert, as the minister in charge, contrary to the wishes of

plaintiffs, the trustees and the majority of the congregation of said church society, and said several defendants, threatened to, and would, if not prevented, although in the minority, turn over the property of said church to the Missouri Synod and join said Missouri Synod. There were issues duly joined between the litigants, and upon a final hearing there was a decree as prayed by the plaintiffs, from which the defendants appeal.

We have already indicated why there can be enforced in this case no forfeiture under the provisions of the deed of Simon and Mary Kerl. The denial of defendants' rights in the real property and the church records is a mere collateral incident to the matter chiefly sought to be enjoined, and that is the turning over of the church society to the control of the Missouri Synod. On the part of the defendants it was alleged that the original organization of this church society was in harmony with the doctrines of the Missouri Synod; that this relation still exists and that no one could become a member of said church society without working a fraud upon it, without agreeing to said constitution, and agreeing in doctrine and practice with said church and said Missouri Synod in all things. The essential differences of doctrine between the General Synod and the Missouri Synod are defined in the answer, according to the views of the defendants, with such circumstantial detail as show how important to them were these matters of faith in this action. If the action was one brought by the grantor to enforce the conditions of their deed there might be good reason for determining whether or not the donation had been diverted to an improper or unauthorized purpose. As it is, the real question is one of mere doctrine, into which civil courts are not equipped to inquire. (*Pounder v. Ashe*, 44 Neb., 672; *Powers v. Budy*, 45 Neb., 208.) The judgment of the district court is therefore

REVERSED.